D. GILL SPERLEIN (SBN: 172887)
gill@sperleinlaw.com
LAW OFFICE OF D. GILL SPERLEIN
345 Grove Street
San Francisco, CA 94102
Telephone: (415) 404-6615
Facsimile: (415) 404-6616

HARMEET K. DHILLON (SBN: 207873)
harmeet@dhillonlaw.com
MARK P. MEUSER (SBN: 231335)
mmeuser@dhillonlaw.com
GREGORY R. MICHAEL (SBN: 306814)
gmichael@dhillonlaw.com
DHILLON LAW GROUP INC.
177 Post Street, Suite 700
San Francisco, California 94108
Telephone: (415) 433-1700
Facsimile: (415) 520-6593

*Attorneys for Plaintiffs Ron Givens
and Christine Bish*

# UNITED STATES DISTRICT COURT FOR

# THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **RON GIVENS,** an individual; **CHRISTINE BISH**, an individual,<br><br>      Plaintiffs,<br>      v.<br><br>**GAVIN NEWSOM**, in his official capacity as the Governor of California; **XAVIER BECERRA**, in his official capacity as the Attorney General of California; **WARREN STANLEY**, in his official capacity as the Commissioner of the California Highway Patrol; **SONIA Y. ANGELL**, in her official capacity as the State Public Health Officer,<br><br>      Defendants. | Case No.: _____<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

Plaintiffs Ron Givens and Christine ("Chris") Bish, through their attorneys, D. Gill Sperlein and the Dhillon Law Group, Inc., for claims against the above-named Defendants Gavin Newsom, in his official capacity as Governor of California; Xavier Becerra, in his official capacity as Attorney General of California; Warren Stanley, in his official capacity as the Commissioner of the California Highway Patrol; and Sonia Y. Angell, in her official capacity as the State Public Health Officer, allege the Court as follows (this "Complaint").

**NATURE OF ACTION**

1. Defendants, in a gross abuse of their power, have seized the Coronavirus pandemic to expand their authority by unprecedented lengths. On March 19, 2020, Governor Gavin Newsom issued Executive Order N-33-20 (the "State Order"), which criminalizes the engagement in all "non-essential" activities, and orders those engaging in "essential" activities to comply with certain social-distancing protocols.[1] This far-reaching mandate prohibits all protesting in California for an indefinite period of time, potentially months or years, until the threat of the pandemic has subsided as determined exclusively by the governor.

2. Plaintiffs bring this Action to assert facial and as-applied challenges to the State Order because they seek to protest Defendants' handling of the pandemic. In particular, Plaintiff Givens intends to protest the State's failure to process background checks for those purchasing firearms in California, which effectively denies Californians their Second Amendment right to keep and bear arms. Plaintiff Bish seeks to protest the extent and duration of the state's extended stay-in-place orders, in light of mounting evidence that they are overbroad, and factually and legally unwarranted. Plaintiffs intend to hold their protest outside, on State Capitol grounds, in a safe and socially-distant manner, staffed by volunteers to ensure the same.

3. By depriving Plaintiffs of their ability to hold these protests—which, due to its nature, cannot be delayed until after the pandemic without losing their purpose—Defendants violate fundamental rights protected by the U.S. and California Constitutions, including freedom of speech

---

[1] A copy of the State Order is attached here as Exhibit 1, and, as of the date of this filing, may be accessed online at the following URL: https://covid19.ca.gov/img/Executive-Order-N-33-20.pdf.

Complaint                                   2                                   Case No.

and assembly, the right to petition the government, and due process and equal protection under the law. It is this Court's duty to defend these constitutional principles, by safeguarding the many rights and liberties of Californians that Defendants violate.

4. The California Highway Patrol denied applications made by Plaintiffs and others to use the California State Capitol grounds for demonstrations, rallies, and protests.[2]

5. The Orders and Defendants' enforcement thereof violate (I) the Free Speech Clause of the First Amendment; (II) the Freedom of Assembly Clause of the First Amendment; (III) the Right to Petition guaranteed by the First Amendment; (IV) the Due Process of Clause of the Fourteenth Amendment; (V) California Constitution Article 1, Section 1's right to liberty; (VI) California Constitution Article 1, Section 2's right to free speech; (VII) California Constitution Article 1, Section 3's right to assemble freely; and (VIII) California Constitution Article 1, Section 3's right to petition.

## JURISDICTION AND VENUE

6. This Action arises under 42 U.S.C. § 1983 in relation to Defendants' deprivation of Plaintiffs' constitutional rights to freedom of speech and assembly, due process, petition, and equal protection rights under the First and Fourteenth Amendments to the U.S. Constitution. Accordingly, this Court has federal question jurisdiction under 28 U.S.C. §§ 1331 and 1343. This Court has authority to award the requested declaratory relief under 28 U.S.C. § 2201; the requested injunctive relief and damages under 28 U.S.C. § 1343(a); and attorneys' fees and costs under 42 U.S.C. § 1988.

7. The Eastern District of California is the appropriate venue for this action pursuant to 28 U.S.C. §§ 1391(b)(1) and (2) because it is the District in which Defendants maintain offices, exercise their authority in their official capacities, and will enforce the Orders; it is also the District in which substantially all of the events giving rise to the claims occurred.

## PARTIES

8. Plaintiff Ron Givens is a resident of Sacramento County. He is employed by the Sacramento Gun Club, located at 3443 Routier Road, Sacramento, CA, 95827, as the Chief Firearms

---

[2] The State Order and the CHP's denial of Plaintiffs' applications may be referred to jointly as "the Orders."

Instructor and Director of Training Operations. Givens has exercised his rights to free speech and peaceful assembly under the First Amendment numerous times in the past decades through public protests in front of the California State Capitol Building. He has participated in and/or organized at least five permitted protests from 2010 to 2015.

9. Plaintiff Chris Bish is a resident of Sacramento County. She is a firm believer and frequent practitioner of her First Amendment rights to free speech and peaceful assembly; she often participates in public demonstrations against governmental overreach, such as one permitted protest in support of personal liberty on April 20, 2020.

10. Defendant Gavin Newsom is made a party to this Action in his official capacity as the Governor of California. The California Constitution vests the "supreme executive power of the State" in the Governor, who "shall see that the law is faithfully executed." Cal. Const. Art. V, § 1. Governor Newsom signed the State Order.

11. Defendant Xavier Becerra is made a party to this Action in his official capacity as the Attorney General of California. Under California law he is the chief law enforcement officer in the State. Cal. Const. Art. V, § 13.

12. Defendant Warren Stanley is made a party to this Action in his official capacity as the Commissioner of the California Highway Patrol. Under California law, he is the chief law enforcement officer with supervision over California Highway Patrol ("CHP"). Cal. Veh. Code § 2107. The California Highway Patrol is the government agency responsible for the intake and approval of permit applications for protests on state property. 13 Cal. Code Regs. § 1855.

13. Defendant Dr. Sonia Y. Angell is made a party to this Action in her official capacity as the State Public Health Officer. She signed the public health directive referred to and incorporated within Governor Newsom's Executive Order N-33-20.[3]

---

[3] The March 19, 2020 Order of the State Public Health Officer was accessible as of April 25, 2020 at: https://www.cdph.ca.gov/Programs/CID/DCDC/CDPH%20Document%20Library/COVID-19/Health%20Order%203.19.2020.pdf.

Complaint 4 Case No.

**FACTUAL ALLEGATIONS**

14.     On or about March 13, 2020, President Donald J. Trump proclaimed a National State of Emergency as a result of the threat of the emergence of a novel coronavirus, COVID-19.[4]

15.     Since the initial outbreak of COVID-19 in the United States in February and March 2020, the federal government's projections of the anticipated national death toll related to the virus has decreased substantially, by an order of magnitude. Despite such revisions, Defendants have increasingly restricted—where not outright banned—Plaintiffs' engagement in constitutionally-protected activities.

**FACTUAL ALLEGATIONS AS TO CALIFORNIA**

16.     On or about March 4, 2020, California Governor Gavin Newsom proclaimed a State of Emergency as a result of the threat of COVID-19.[5]

17.     On or about March 19, 2020, California Governor Newsom issued Executive Order N-33-20 in which he ordered "all residents are directed to immediately heed the current State public health directives."

18.     The State public health directive requires that "all individuals living in the State of California to stay home or at their place of residence except as needed to maintain continuity of operations of the federal critical infrastructure sectors …".[6]

19.     On or about March 22, 2020, the California Public Health Officer designated a list of "Essential Critical Infrastructure Workers."[7] Neither the State Order, the state public health directive, nor any subsequent communication from the Office of Governor Newsom or Public Health Officer

---

[4] As of the date of this filing, the Proclamation of a National Emergency can be found online at: https://www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/.

[5] As of the date of this filing, the Proclamation of a State of Emergency can be found online at: https://www.gov.ca.gov/wp-content/uploads/2020/03/3.4.20-Coronavirus-SOE-Proclamation.pdf.

[6] The State Public Health Directive was included in the text of Executive Order N-33-20.

[7] As of the date of this filing, the list of Essential Critical Infrastructure Workers can be found online at: https://covid19.ca.gov/img/EssentialCriticalInfrastructureWorkers.pdf.

Angell make any exceptions for First Amendment activities such as in-person gatherings for the purpose of peaceful protest.

20. The Order provides no exception for demonstrations, protests, or other First Amendment protected activities, thereby effectively banning all gatherings of any size for the purpose of protesting or petitioning the government. Meanwhile, the list deems the continuity of services provided by coffee baristas, restaurant workers, and laundromat technicians to be so necessary for society that these activities are permitted to continue under the State Order, despite the existence of the very same risk Defendants rely on to stymie the exercise of fundamental rights.

21. The public health directive provides that its directives "shall stay in effect until further notice." Ex. 1.

**GIVENS' PLANNED PROTEST**

22. Based on the State Order, and at the direction of Governor Newsom, the California Highway Patrol has refused to allow any gatherings on the grounds of the state capitol for the purpose of protesting or petitioning the government.

23. The grounds of the State Capitol Building are the most important and widely used public forum in California. It is where legislators meet, and therefore, the closest that protestors may physically get to having their grievances actually heard by high-level government officials. One California court described the west plaza as "the frequent site of civic and ceremonial occasions, of concerts, receptions for visiting dignitaries, public meetings and demonstrations. Pickets urging a wide variety of viewpoints often stand or walk outside the west entrance and, less frequently, at the building's other entrances. Distribution of handbills and solicitation of petition signatures are customary activities outside the Capitol entrances, particularly at the west plaza." *Simpson v. Mun. Court*, 14 Cal. App. 3d 591, 597 (1971). Countless watershed protests have been held here, including the 2011-12 Occupy protests in Sacramento,[8] the 2018 protests against the police shooting of Stephon

---

[8] https://www.rt.com/usa/occupy-protest-california-sacramento-979/.

1   Clark,[9] the 1991 protests in reaction to Governor Pete Wilson's veto of gay rights,[10] and the famous

2   May 2, 1967 Black Panther Open Carry March (protesting the anti-gun Mulford Bill).[11]

3       24.    Plaintiff Givens sought to hold a protest on the State Capitol Building grounds,

4   decrying the delay of background checks for gun purchasers by the DOJ under the guise of a public

5   health emergency.

6       25.    The California Department of Justice ("CADOJ") is required to complete a background

7   check within 30 days; if not, the seller may transfer the firearm to the purchaser. 11 Cal Code Regs. §

8   4230(b)(1)(C).

9       26.    The CADOJ traditionally completes these within 10 days.[12]

10      27.    During the COVID-19 outbreak, many customers purchased firearms from Given's

11  place of employment, The Sacramento Gun Club. Many of the firearm purchases by customers were

12  motivated by heightened need for personal safety during a pandemic and concerns that county sheriffs,

13  such as the Los Angeles County Sheriff, might shut down gun stores during the pandemic.

14      28.    Since the outbreak, the CADOJ has failed to conduct background checks within 10

15  days, blaming the delay on the COVID-19 outbreak.

16      29.    This slowdown of background checks was not limited to purchasers, but also gun store

17  employees.

18      30.    Alarmed by the CADOJ's failure to timely process background checks during the

19  coronavirus outbreak, Givens decided to hold a protest on the matter. Givens intends for all protesters

20  to abide by Center for Disease Control guidelines for social distancing and the wearing of face masks.

---

[9] https://abc7news.com/stephon-clark-shooting-sacramento-officer-involved/3252401/.

[10] https://www.latimes.com/archives/la-xpm-1991-10-12-mn-153-story.html.

[11] https://www.pbs.org/hueypnewton/actions/actions_capitolmarch.html.

[12] The Attorney General's website, as of April 25, 2020 at https://oag.ca.gov/firearms, stated that "[the] DOJ typically completed these checks within Penal Code Section 26815(a)'s 10-day waiting period."

31. Givens submitted a permit application to the State Capitol Permit Office of the California Highway Patrol on April 22, 2020.

32. In Givens' permit application, he stated his plans to abide by the Center for Disease Control's guidelines, and designated the entire grounds for the State Capitol Building for the protest, to ensure that he and other protesters had enough space for social distancing (i.e. a minimum of six feet between households).

33. After the application was submitted, a CHP officer reached out to Givens to verify his identity. The officer reached out again on the morning of April 24, 2020, inquiring as to why Givens required the entirety of the State Capitol Building grounds for his protest. Givens explained that he required sufficient space for all of his fellow protestors to maintain social distancing. The officer agreed with Givens that upon that basis, the request was a good idea.

34. The officer reached out again later in the afternoon to inform Givens that his permit had been denied. Givens received an email stating the same after the call.

35. The CHP officer informed Givens that the basis for his application's denial was that defendant Governor Newsom had instructed the CHP that no permits should be issued for protests, as they were not allowed under the State Order. CHP provided no other reason for its decision.

36. The California State Capitol grounds have sufficient space for Givens' planned protest, even with social distancing and assuming large number of people attend. The State Capitol grounds are at least forty acres of land, or 1,742,400 sq. ft. Even if each protester was surrounded by 144 sq. ft. of space, more than ten thousand protestors would be able to fit within the State Capitol grounds in this manner. Givens believes approximately one thousand people are likely to attend the protest, leaving ample room for the protesters to spread out.

37. Givens intends to instruct his fellow attendees to follow social distancing and wear masks, and to have volunteers to ensure the same, by acting as guides and marking socially-distanced places with tape.

38. To his knowledge, Plaintiff Givens has never had or contracted coronavirus, nor does he exhibit any symptoms associated with coronavirus.

39. By banning protests generally, and denying Givens' permit specifically, Defendants have deprived Givens of the opportunity for airing his grievances against the government, including the State's failure to conduct timely background checks for those wishing to purchase a gun and restrictions on speech activities.

40. Because the protest seeks to challenge Defendants' handling of the coronavirus outbreak, it cannot be delayed until after the threat of that outbreak subsides and the State Order is lifted. By the time that has occurred, there will presumably be no need for any protest, as Defendants will have resumed processing background checks.

### BISH'S PLANNED PROTEST

41. Plaintiff Bish is campaigning for election to the U.S. House to represent California's Sixth Congressional District. Bish advanced from the primary on March 3, 2020, and she will be on the ballot in the November 3, 2020 general election.

42. On April 20, 2020, Bish attended a rally in Sacramento, which advocated the lifting of the State Order and restarting the economy. Many of the on-foot CHP officers Plaintiff Bish observed around the rally were not wearing masks; she only observed bicycle patrol officers wearing them, but they were socializing with each other in close proximity.

43. On or around April 23, 2020, Bish applied to the CHP for a permit to hold a rally in front of the State Capitol Building on May 2, 2020. The purpose of the rally was to encourage the state to lift its coronavirus-related restrictions, and to raise voter awareness about civil rights issues pertaining to the stay-at-home orders.

44. Bish and her fellow protestors intend to practice social distancing and wear masks during the May 2 rally.

45. After Bish called multiple times on April 24, 2020 for a status update, an Officer Moos spoke to her over the phone. He informed Bish that the CHP denied this application "due to the State and County Health Order and our inability to ensure proper social distancing to keep demonstrators safe."

46. The CHP then informed her that many groups planned to hold their demonstrations despite the blanket denials of permits, and inquired whether Bish would be proceeding with the rally. Bish replied that out of respect for law enforcement, she would not do so without a permit.

47. To her knowledge, Bish has never had or contracted coronavirus, nor does she exhibit any symptoms associated with coronavirus.

48. As of April 26, 2020, Sacramento County has one thousand and twenty-five (1,025) cases and forty-one (41) deaths associated with COVID-19, according to information posted on the county's website.[13] The United States Census estimates that as of July 1, 2019, Sacramento County's population is 1,552,058 people.[14] Accordingly, less than seven hundredths of one percent (0.07%) of Sacramento County's population is known to have contracted the virus as of April 25, 2020, despite the April 20, 2020 protest on the State Capitol grounds and the many other unpermitted demonstrations CHP referred to in its call with Bish.

## CLAIMS

## FIRST CLAIM FOR RELIEF

**Free Exercise Clause of First Amendment to U.S. Constitution**

**(42 U.S.C. § 1983)**

(*By all Plaintiffs against all Defendants*)

49. Plaintiffs incorporate by reference the allegations in the preceding paragraphs, as if fully set forth herein.

50. The Orders and Defendants' enforcement thereof violate the Free Speech Clause of the First Amendment, both facially and as-applied to Plaintiffs.

51. The Free Speech Clause was incorporated against the states in *Gitlow v. New York*, 268 U.S. 652 (1925) (dicta) and *Stromberg v. California*, 283 U.S. 359 (1931).

52. Under Defendants' Orders, demonstrations, rallies, and protests, are entirely prohibited.

---

[13] Per Sacramento County Department of Public Health's web page visited on April 25, 2020 https://www.saccounty.net/COVID-19/Pages/default.aspx.

[14] United States Census Bureau statistics for Sacramento County can be found online at: https://www.census.gov/quickfacts/fact/table/sacramentocountycalifornia,CA/PST045218.

Complaint 10 Case No.

53. Plaintiffs seek to engage in protected speech in the form of a protest on the grounds of the state capitol.

54. Defendants' imposition of the Orders is unreasonable and has a chilling effect on protected speech by outright banning all gatherings for the purpose of demonstrations, rallies, and protests.

55. The Orders are unconstitutionally overbroad, and therefore void as a matter of law, both on their faces, and as it is applied.

56. Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to its constitutional rights unless Defendants are enjoined from implementing and enforcing the Orders.

57. Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to declaratory relief and temporary, preliminary, and permanent injunctive relief invalidating and restraining enforcement of the Orders.

58. Plaintiffs found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiffs are therefore entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

## SECOND CLAIM FOR RELIEF

### Violation of First Amendment Freedom of Assembly Clause

### (42 U.S.C. § 1983)

*(By all Plaintiffs against all Defendants)*

59. Plaintiffs incorporate by reference the allegations in the preceding paragraphs, as if fully set forth herein.

60. The Orders and Defendants' enforcement thereof violate the First Amendment, both facially and as-applied to Plaintiffs. The First Amendment of the Constitution protects the "right of the people peaceably to assemble." The Freedom of Assembly Clause was incorporated against the states in *De Jonge v. Oregon*, 299 U.S. 353 (1937).

61. "The right of free speech, the right to teach, and the right of assembly are, of course, fundamental rights." *Whitney v. California*, 274 U.S. 357, 373 (1927). When a government practice

restricts fundamental rights, it is subject to "strict scrutiny" and may be justified only if it furthers a compelling government purpose and, even then, only if no less restrictive alternative is available. *See, e.g., San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 16-17 (1973); *Dunn v. Blumstein*, 405 U.S. 330 (1972).

62. By denying Plaintiffs the ability to conduct political demonstrations and rallies while maintaining space in a manner that complies with the CDC guidelines for social distancing, Defendants are in violation of the Freedom of Assembly Clause. Defendants cannot meet the no-less-restrictive-alternative test. The CDC's social distancing guidelines are appropriate to limit the spread of COVID-19. Imposing more restrictive requirements that prohibit all political demonstrations regardless of protective measures is not the least restrictive means of achieving Defendants' public safety goals.

63. Requiring Plaintiffs to refrain from political demonstrations and rallies, despite substantial modifications to satisfy the public health interests at stake, violates Plaintiffs' Constitutional right to peaceably assemble.

64. Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from implementing and enforcing the Orders.

65. Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to declaratory relief and temporary, preliminary, and permanent injunctive relief invalidating and restraining enforcement of the Orders.

66. Plaintiffs found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiffs are therefore entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

### THIRD CLAIM FOR RELIEF

### Violation of First Amendment Right to Petition

### (42 U.S.C. § 1983)

(*By all Plaintiffs against all Defendants*)

67. Plaintiffs incorporate by reference the allegations in the preceding paragraphs, as if fully set forth herein.

68. The Orders and Defendants' enforcement thereof violate the Petition Clause of the First Amendment both facially and as-applied to Plaintiffs.

The Petition Clause was incorporated against the states in *Edwards v. South Carolina*, 372 U.S. 229, 83 S. Ct. 680 (1963).

69. The First Amendment guarantees "the right of the people . . . to petition the Government for a redress of grievances." Like other First Amendment rights, the right to petition is fundamental. The right is implicit in "[the] very idea of government, republican in form." *United States v. Cruikshank*, 92 U.S. 542 (1876) "The right to petition is cut from the same cloth as the other guarantees of that Amendment, and is an assurance of a particular freedom of expression." McDonald v. Smith, 472 U.S. 479, 482, 105 S. Ct. 2787, 2789 (1985). In fact, "[t]he right to petition is in some sense the source of other fundamental rights, for petitions have provided a vital means for citizens to request recognition of new rights and to assert existing rights against the sovereign." *Borough of Duryea v. Guarnieri*, 564 U.S. 379, 397, 131 S. Ct. 2488, 2500 (2011)

70. When a government practice restricts fundamental rights, it is subject to "strict scrutiny" and can be justified only if it furthers a compelling government purpose and, even then, only if no less restrictive alternative is available. *See, e.g.*, *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 16-17 (1973); *Dunn v. Blumstein*, 405 U.S. 330 (1972).

71. Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from implementing and enforcing the Orders.

72. Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to declaratory relief and temporary, preliminary, and permanent injunctive relief invalidating and restraining enforcement of

the Orders. Plaintiffs found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiffs are therefore entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

# FOURTH CLAIM FOR RELIEF

### Due Process Clause of Fourteenth Amendment to U.S. Constitution

### (42 U.S.C. § 1983)

(*By all Plaintiffs against all Defendants*)

73. Plaintiffs incorporate by reference the allegations in the preceding paragraphs, as if fully set forth herein.

74. The State Order and Defendants' enforcement thereof violate the Due Process Clause of the Fourteenth Amendment, both facially and as-applied to Plaintiffs.

75. A regulation is constitutionally void on its face when, as matter of due process, it is so vague that persons "of common intelligence must necessarily guess at its meaning and differ as to its application" *Connally v. General Const. Co.*, 269 U.S. 385, 391 (1926); *People ex rel. Gallo v. Acuna*, 14 Cal.4th 1090, 1115 (1997). The void for vagueness doctrine is designed to prevent arbitrary and discriminatory enforcement. The problem with a vague regulation is that it "impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis...." *Grayned v. City of Rockford*, 408 U.S. 104, 108–109 (1972).

76. The State Order void for vagueness.

77. The State Order provides that individuals are ordered to "heed" State public health directives. The word "heed" is defined by Webster's Dictionary to mean "to give consideration or attention to" —not specifically to adhere to those directives. Yet, the State Order is widely reported in the media and cited by local and state officials, including the California Highway Patrol, as compelling compliance with State public health directives to shelter in place unless conducting essential business. The State Order also includes the text of the public health directive, which includes language that ostensibly "order[s]" compliance, creating further ambiguity as to whether Plaintiffs must comply with, or merely heed, the public health directive. Accordingly, the State Order is vague

as to what precisely is being ordered, and what actions may result in criminal penalties, fines, or imprisonment.

78. As a result of these ambiguities, no reasonable person could understand what conduct violates the Order and might subject that person to criminal penalties.

79. Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from implementing and enforcing the Orders.

80. Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to declaratory relief and temporary, preliminary, and permanent injunctive relief invalidating and restraining enforcement of the Orders.

81. Plaintiffs found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiffs are therefore entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

## FIFTH CLAIM FOR RELIEF

### Right to Liberty

### (Cal. Const. Art. 1, § 1)

(*By all Plaintiffs against all Defendants*)

82. Plaintiffs incorporate by reference the allegations in the preceding paragraphs, as if fully set forth herein.

83. In California, "[a]ll people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy. Cal. Const. Art. 1, §1.

84. California courts have held that Public Health Officials' authority over the rights of personal liberty is limited. Before exercising their full powers to quarantine, there must be "reasonable grounds [] to support the belief that the person so held is infected." *Ex parte Martin*, 83 Cal. App. 2d 164 (1948). Public Health Officials must be able to show "probable cause to believe the person so held has an infectious disease …" *Id.*

85. California courts found that Public Health Officials could not quarantine 12 blocks of San Francisco Chinatown because of nine (9) deaths due to bubonic plague. *See Jew Ho v. Williamson*, 103 F. 10 (C.C. Cal. 1900), and *Wong Wai v. Williamson,* 103 F. 1 (C.C. Cal. 1900).

86. The court found it "purely arbitrary, unreasonable, unwarranted, wrongful, and oppressive interference with the personal liberty of complainant" who had "never had or contracted said bubonic plague; that he has never been at any time exposed to the danger of contracting it, and has never been in any locality where said bubonic plague, or any germs of bacteria thereof, has or have existed". *Jew Ho*, 103 F. 10 (C.C. Cal. 1900).

87. California courts have found that "a mere suspicion [of a contagious disease], unsupported by facts giving rise to reasonable or probable cause, will afford no justification at all *for depriving persons of their liberty* and subjecting them to virtual imprisonment under a purported order of quarantine." *Ex parte Arta*, 52 Cal. App. 380, 383 (1921) (emphasis added).

88. In *Jew Ho v. Williamson,* 103 F. 10 (C.C. Cal. 1900), and *Wong Wai v. Williamson,* 103 F. 1 (CC Cal. 1900), the California courts found that there were more than 15,000 people living in the twelve blocks of San Francisco Chinatown who were to be quarantined. The courts found it unreasonable to shut down the ability of over 15,000 people to make a living because of nine deaths. This was one death for every 1,666 inhabitants of Chinatown.

89. Plaintiffs have never had or contracted said coronavirus; they have never been at any time exposed to the danger of contracting it, and have never been in any locality where said coronavirus, or any germs of bacteria thereof, has or have existed. Plaintiffs may not be presumed to be infectious on the basis of the evidence available to Defendants.

90. Requiring Plaintiffs to abstain from all political rallies or demonstrations, despite substantial modifications to satisfy the public health interests at stake, violates their California Constitutional liberty rights.

91. Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from implementing and enforcing the Orders.

92. Plaintiffs have found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiffs are therefore entitled to an award of attorney fees and costs pursuant to California Code of Civil Procedure Section 1021.5.

## SIXTH CLAIM FOR RELIEF

### Freedom of Speech

### (Cal. Const. Art. 1, § 2)

*(By all Plaintiffs against all Defendants)*

93. Plaintiffs incorporate by reference the allegations in the preceding paragraphs, as if fully set forth herein.

94. In California "[e]very person may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of this right. A law may not restrain or abridge liberty of speech or press." Cal. Const. Art. 1, §2.

95. "The California Supreme Court has recognized that the California Constitution is 'more protective, definitive and inclusive of rights to expression and speech' than the First Amendment to the United States Constitution." *Rosenbaum v. City and County of San Francisco*, 484 F.3d 1142, 1167 (9th Cir. 2007).

96. For the reasons stated in Plaintiffs' First Claim for Relief, requiring Plaintiffs to abstain from political rallies and demonstrations to satisfy the public health interests at stake, violates Plaintiffs' liberty of speech rights under the California Constitution as well.

97. Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from implementing and enforcing the Orders.

98. Plaintiffs have found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiffs are therefore entitled to an award of attorney fees and costs pursuant to California Code of Civil Procedure Section 1021.5.

//

### SEVENTH CLAIM FOR RELIEF

### Freedom of Assembly

### (Cal. Const. Art. 1, § 3)

(*By all Plaintiffs against all Defendants*)

99.   Plaintiffs incorporate by reference the allegations in the preceding paragraphs, as if fully set forth herein.

100.   In California "[t]he people have the right to … assemble freely to consult for the common good." Cal. Const. Art. 1, §3.

101.   For the reasons stated in Plaintiffs' Second Claim for Relief, requiring Plaintiffs to abstain from political demonstrations and rallies, despite substantial modifications to satisfy the public health interests at stake, violates Plaintiffs' right to assemble freely under the California Constitution as well.

102.   Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from implementing and enforcing the Orders.

103.   Plaintiffs have found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiffs are therefore entitled to an award of attorney fees and costs pursuant to California Code of Civil Procedure Section 1021.5.

### EIGHTH CLAIM FOR RELIEF

### Right to Petition

### (Cal. Const. Art. 1, § 3)

(*By Givens against all Defendants*)

104.   Plaintiffs incorporate by reference the allegations in the preceding paragraphs, as if fully set forth herein.

105.   In California "[t]he people have the right to … instruct their representatives [and] petition government for redress of grievances. Cal. Const. Art. 1, §3.

106.   For the reasons stated in Plaintiffs' Third Claim for Relief, requiring Plaintiffs to abstain from political demonstrations, rallies, and protests, despite substantial modifications to satisfy

the public health interests at stake, violates Plaintiffs' right to petition freely under the California Constitution as well.

107.   Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from implementing and enforcing the Orders.

108.   Plaintiffs have found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiffs are therefore entitled to an award of attorney fees and costs pursuant to California Code of Civil Procedure Section 1021.5.

**WHEREFORE**, Plaintiffs respectfully request that this Court enter judgment against Defendants as follows:

A.   An order and judgment declaring that the State Order, facially and as-applied to Plaintiffs, violates the First and Fourteenth Amendments to the U.S. Constitution and Article 1, Sections 1, 2, and 3 of the California Constitution;

B.   An order temporarily, preliminarily, and permanently enjoining and prohibiting Defendants from enforcing the State Order or otherwise interfering with Plaintiffs ability to exercise constitutionally protected rights;

C.   For attorneys' fees and costs;

D.   Such other and further relief as the Court deems appropriate and just.

Respectfully submitted,

Date: April 27, 2020

LAW OFFICE OF D. GILL SPERLEIN

By:   /s/ D. Gill Sperlein
D. GILL SPERLEIN (SBN: 172887)
gill@sperleinlaw.com
LAW OFFICE OF D. GILL SPERLEIN
345 Grove Street
San Francisco, CA 94102
Telephone: (415) 404-6615
Facsimile: (415) 404-6616

DHILLON LAW GROUP INC.

By: /s/ Harmeet K. Dhillon
HARMEET K. DHILLON (SBN: 207873)
harmeet@dhillonlaw.com
MARK P. MEUSER (SBN: 231335)
mmeuser@dhillonlaw.com
GREGORY R. MICHAEL (SBN: 306814)
gmichael@dhillonlaw.com
DHILLON LAW GROUP INC.
177 Post Street, Suite 700
San Francisco, California 94108
Telephone: (415) 433-1700

*Attorneys for Plaintiffs Ron Givens and Christine Bish*