1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   RON GIVENS, et al.,                    No.  2:20–cv–0852–JAM–CKD

12                  Plaintiffs,             ORDER ON MOTION TO COMPEL &
                                            MOTION FOR PROTECTIVE ORDER
13           v.
                                            (ECF Nos. 58 & 59)
14   GAVIN NEWSOM, et al.,

15                  Defendants.

16

17           Presently before the court are the parties' cross-motions to compel and to protect against

18   the depositions of four current or former California state officials, three of whom are defendants

19   in this civil rights action.[1]  (ECF Nos. 58, 59.)  The parties filed joint statements regarding the

20   discovery disagreement.  (ECF Nos. 60, 61.)  The court heard remote arguments on the motions

21   on January 6, 2021.  (ECF No. 62.)   Mark Meuser and Gill Sperlein appeared for plaintiffs, and

22   James Walter appeared for defendants.  For the following reasons, the court GRANTS IN PART

23   and DENIES IN PART defendants' motion for protective order, and DENIES plaintiffs' motion

24   to compel.

25   ////

26   ////

27
     _____
28   [1] This matter was referred to the undersigned pursuant to Eastern District of California Local
     Rule 302(c)(1) and 28 U.S.C. § 636(b)(1).

**BACKGROUND**

**A.  The Underlying Action**

*1.  The Complaint*

This discovery dispute arises in plaintiffs' 42 U.S.C. § 1983 action challenging certain COVID-19 emergency orders issued by California state officials as violating plaintiffs' right to peaceful assembly, free speech, and petition.  On March 19, 2020, as this country was first beginning to grapple with the COVID-19 threat, Governor Gavin Newsom signed Executive Order N-33-20 stating, in relevant part, that "all residents are directed to immediately heed the current State public health directives."  (ECF No. 1.1 (Ex. 1) ¶ 1.)  Reprinted and incorporated therein was the March 19, 2020 Order of the State Public Health Officer ("PHO") Dr. Sonia Angell, requiring "all individuals living in the State of California to stay home or at their place of residence except as needed to maintain continuity of operations of the federal critical infrastructure sectors."  (Id.)

On April 22, 2020, plaintiff Ron Givens, who works for the Sacramento Gun Club, applied for a permit to hold a 1,000-person protest on the grounds of the State Capitol Building ("Capitol grounds") on May 3rd.  (ECF No. 1 at 8.)  The stated purpose was to protest the State's delays in processing background checks for gun purchasers during the COVID-19 outbreak.  (Id. at 7; ECF No. 33.2 at 2)  On April 23, 2020, plaintiff Christine Bish, who was then campaigning for election to represent California in the U.S. House of Representatives, also applied for a permit to protest on the Capitol grounds—for 500 people on May 2nd.  (ECF Nos. 1 at 9, 33.2 at 2.)  The stated purpose of her rally was to encourage the State to lift its coronavirus-related restrictions, and to raise voter awareness about civil rights issues pertaining to the stay-at-home orders.  (Id.)

The next day, April 24, 2020, officers of the California Highway Patrol ("CHP"), which processes permit applications for the Capitol grounds, called each plaintiff to inform them their permits had been denied.  (Id. at 8, 9.)  According to the complaint, "[t]he CHP officer informed Givens that the basis for his application's denial was that defendant Governor Newsom had instructed the CHP that no permits should be issued for protests, as they were not allowed under the State Order."  (Id. at 8.)  Likewise, CHP Officer Moos who spoke to Bish said her application

2

1    was denied "due to the State and County Health Order and our inability to ensure proper social

2    distancing to keep demonstrators safe." (Id. at 9.)

3           On April 27, 2020, plaintiffs filed this action challenging the March 19, 2020 executive

4    order and the CHP's denial of Capitol grounds protest permit applications pursuant to that order

5    (collectively, "the Orders"). (ECF No. 1.)  The complaint names four defendants:  Governor

6    Newsom, California Attorney General Xavier Becerra, then-CHP Commissioner Warren Stanley,

7    and then-PHO Dr. Angell.  (Id. at 4.)  Defendants Newsom, Stanley, and Angell are subjects of

8    the present discovery dispute.  At this juncture, four causes of action remain in this case.  First,

9    plaintiffs claim that the Orders' issuance and enforcement violate the Free Speech Clause of the

10   First Amendment by entirely prohibiting demonstrations at the Capitol grounds.  (Id. at 10-11.)

11   Specifically, plaintiffs allege that this prohibition "is unreasonable and has a chilling effect on

12   protected speech" and that the Orders are unconstitutionally overbroad.  (Id. ¶¶ 54-55.)  Second,

13   plaintiffs claim that the Orders violate the Freedom of Assembly Clause because the purported

14   ban "restricts fundamental rights" by outright prohibiting political rallies where less restrictive

15   alternatives exist to satisfy public health interests.  (Id. at 11-12.)  Third, plaintiffs claim that for

16   the same reason, the Orders also violate the First Amendment's Petition Clause.  (Id. at 13.)  And

17   finally, plaintiffs assert a violation of the Fourteenth Amendment's Due Process Clause, claiming

18   that the March 19, 2020 executive order to "heed" public health directives is unconstitutionally

19   vague.  (Id. at 14-15.)  Plaintiffs seek declaratory relief and an injunction halting the executive

20   order's enforcement.  (Id. at 19.)

21                          *2.  Subsequent Events*

22          With their complaint, plaintiffs also filed an application for a temporary restraining order

23   ("TRO") preliminarily enjoining the executive order's enforcement.  (ECF No. 5.)  The court

24   denied the application, holding that plaintiffs were unlikely to succeed on the merits of their

25   claims both because the Orders were "within the scope of the State's emergency powers to fight

26   the spread of COVID-19" and because even under a traditional constitutional analysis, there was

27   no violation of plaintiffs' constitutional rights.  (ECF No. 18 at 7.)

28   ////

1       In June 2020, plaintiffs sought reconsideration of the TRO denial, arguing in part that

2  events since the TRO ruling showed that defendants were "selectively enforcing the Governor's

3  [executive order] based on the content of the anticipated speech."  (ECF No. 28 at 2; see id. at 11,

4  15-16.)  Plaintiffs contrasted (a) the State's apparent sanctioning of dozens of large in-person

5  protests against police brutality that exceeded the 100-person limit on attendance established by a

6  recent May 25, 2020 executive order with (b) arrests of individuals protesting the "authoritarian

7  response" to the COVID-19 threat at the Capitol grounds.  (Id. at 11-12.)

8       Defendants opposed reconsideration and moved to dismiss the action as having been

9  mooted by the State's latest June 12, 2020 directive completely removing caps on attendance at

10 outdoor protests.  (ECF Nos. 33, 35 at 8.)  In support of the motion to dismiss, defendants filed a

11 declaration by CHP Captain Douglas Lyons, who supervises the review of Capitol grounds

12 protest permit applications.  (ECF No. 33.2.)  Captain Lyons averred that the CHP "adopted

13 permit practices after April 20, 2020, which were consistent with state public health directives,

14 including the California Department of Public Health (CDPH) determination that 'all gatherings

15 should be postponed or canceled' to protect public health and slow the rate of transmission of

16 COVID-19."  (Id. ¶ 3.)  Based on those policies, plaintiffs' permit applications were denied "in

17 the interest of public health and safety."  (Id. ¶ 6.)

18      In a ruling from the bench on July 14, 2020, the court denied plaintiffs' motion for

19 reconsideration, and denied in part defendants' motion to dismiss.[2]  (ECF Nos. 42, 45.)  The court

20 held that, despite the recent lifting of the cap on outdoor protests, the action was not moot because

21 the March 19, 2020 executive order still remained in effect and it was not unlikely that the

22 challenged congregation limitations would be re-imposed, given the ever-shifting calculus of the

23 COVID-19 response.[3]  (ECF No. 45 at 14-19.)

24      The State's stay-at-home orders continue to morph with the waves of the pandemic.  At

25 present, there is a 200-person limit on single-event, outdoor gatherings at the Capitol grounds.

26 _____

27 [2] On December 4, 2020, the Ninth Circuit dismissed for lack of jurisdiction plaintiffs'
   interlocutory appeal of the TRO denial.  (ECF No. 56.)

28 [3] With plaintiffs' concession that their state law claims were barred by Eleventh Amendment
   immunity, the court granted the motion to dismiss as to those claims.  (ECF No. 45 at 12, 19.)

1   (ECF No. 60 at 5 (citing https://capitolpermits.chp.ca.gov).)

2       **B.  The Discovery Dispute**

3       In the present cross-motions, plaintiffs seek to compel and defendants seek to prevent—or

4   at least postpone—the depositions of (1) defendant Governor Newsom, (2) defendant former CHP

5   Commissioner Stanley, (3) defendant former PHO Dr. Angell, and (4) non-party Dr. James Watt,

6   the Chief of California's Division of Communicable Disease Control, who throughout this

7   litigation has submitted declarations regarding COVID-19 and the State's response, in support of

8   defendants.

9       On August 26, 2020, the parties exchanged their Rule 26(a)(1) initial disclosures.  (ECF

10   No. 61 at 13.)  Among other individuals disclosed by defendants as "likely to have discoverable

11   information" were Dr. Watt, CHP Captain Lyons who oversaw Capitol grounds permit reviews,

12   and CHP Officer Moos who originally called plaintiff Bish to inform her of her application's

13   denial.  (Id.; ECF Nos. 1 at 9, 33.2 at 2.)  Plaintiffs' disclosures indicated their intent to depose

14   defendants Newsom, Stanley, and Angell, as well as Dr. Watt.  (ECF No. 60 at 5.)

15       On October 26, 2020, plaintiffs noticed the depositions of these four individuals for

16   November 10, 11, 12, and 13, 2020, respectively.  (ECF No. 60 at 3.)  Defendants informed

17   plaintiffs of their objection to these depositions and indicated that they would move for a

18   protective order to prevent the depositions.  (Id. at 5.)  Plaintiffs agreed to suspend these

19   depositions until after the resolution of the present motion.  (Id.)  On November 6, 2020,

20   defendants filed the motion for protective order, noticing the motion for hearing on December 16,

21   2020.  (ECF No. 55.)  When no joint statement of the discovery disagreement was filed by the

22   deadline of December 9, 2020, the court denied without prejudice the motion for protective order

23   and vacated the hearing.[4]  (ECF No. 57.)  On December 15, 2020, plaintiffs filed the instant

24   motion to compel the depositions, and defendants concurrently re-filed the instant motion for

25   protective order.  (ECF Nos. 58, 59.)  Defendants have not objected to depositions of the CHP

26   ---

27   [4] Defendants explain that they informed plaintiffs as early as December 2, 2020 that the process
for completing the joint statement was taking longer than anticipated and offered to re-notice the
motion for a later date.  (ECF No. 60 at 5.)  Plaintiffs declined that offer and then did not respond

28   to defendants' two emails on December 9, 2020.  (Id.)

1    fact witnesses Captain Lyons and Officer Moos, which are scheduled sometime in late January.

2    (ECF No. 60 at 5, 9.)

3    **DISCUSSION**

4         **A. Motion to Compel**

5         Plaintiffs' motion to compel is based entirely on defendants' failure to submit their portion

6    of the joint statement to plaintiffs in time to meet the December 9 filing deadline for the original

7    motion for protective order, and the court's consequent denial of that motion without prejudice.

8    (ECF No. 60 at 3-4.)  This argument is totally unavailing.  Plaintiffs cannot refuse to cooperate

9    with defendants' attempts to meet and confer before re-noticing their motion for protective order

10   for a later date (as required by this court's Local Rules, see L.R. 251(b)) and then use the non-

11   prejudicial denial of the motion as a substantive basis to have the court require appearances at the

12   disputed depositions.  The court finds this motion to compel largely duplicative of the now re-

13   filed and properly supported motion for protective order, where both parties have focused their

14   substantive legal arguments.  Accordingly, the court turns to that motion.

15        **B. Motion for Protective Order**

16        In their motion, defendants seek to preclude entirely the depositions of Governor

17   Newsom, former Commissioner Stanley, and former PHO Dr. Angell, and to preclude the

18   deposition of Dr. Watt at least until expert discovery begins.  (ECF No. 60 at 10-11.)  Defendants

19   argue that proposed deponents Newsom, Stanley, and Angell were, at the time of the conduct

20   challenged in this litigation, high-ranking government officials who must not be subject to

21   deposition in the absence of extraordinary circumstances—invoking the so-called "apex

22   doctrine." (ECF Nos. 60 at 4, 61 at 3.)  As to Dr. Watt, defendants argue that he has thus far

23   offered only expert assistance and that plaintiffs therefore may only depose him after the period

24   for expert discovery begins (currently scheduled for July 16, 2021) and only in the event that

25   defendants designate Dr. Watt as one of their expert witnesses.  (ECF No. 60 at 10.)

26        Under Rule 26(c) of the Federal Rules of Civil Procedure, "[t]he court may, for good

27   cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or

28   undue burden or expense" by, among other things, forbidding a deposition or limiting its scope.

Fed. R. Civ. P. 26(c)(1).  When a party seeks the deposition of a high-ranking government or corporate official (a so-called "apex" deposition), there is "tremendous potential for abuse or harassment."  Apple Inc. v. Samsung Elecs. Co., Ltd, 282 F.R.D. 259, 263 (N.D. Cal. 2012). Apex depositions are generally not permitted absent "extraordinary circumstances" because "high ranking government officials have greater duties and time constraints than other witnesses and . . . , without appropriate limitations, such officials will spend an inordinate amount of time tending to pending litigation."  Thomas v. Cate, 715 F. Supp. 2d 1012, 1048 (E.D. Cal. 2010); see Coleman v. Schwarzenegger, No. CIV S-90-0520-LKK-JFM-P, 2008 WL 4300437, at *3 (E.D. Cal. Sept. 15, 2008).  As such, courts have developed the "apex" doctrine, which provides a framework for determining whether "good cause" exists to forbid the deposition under Rule 26(c).  Smith v. City of Stockton, No. 2:15-CV-0363-KJM-AC, 2017 WL 11435161, at *2 (E.D. Cal. Mar. 27, 2017).

Under the apex doctrine, "an individual objecting to a deposition must first demonstrate he is sufficiently high-ranking to invoke the deposition privilege."  Estate of Levingston v. Cty. of Kern, 320 F.R.D. 520, 525 (E.D. Cal. 2017).  Upon this showing, the court then considers whether there are "extraordinary circumstances" that justify deposing the high-ranking officials, based on "(1) whether the deponent has unique first-hand, non-repetitive knowledge of the facts at issue in the case; and (2) whether the party seeking the deposition has exhausted other less intrusive discovery methods."  Id.; see Coleman, 2008 WL 4300437, at *3 (to show extraordinary circumstances, plaintiffs must show that proposed high-ranking deponents "possess personal knowledge of facts critical to the outcome of the proceedings and that such information cannot be obtained by other means").

### 1.  *Governor Newsom*

Although generally "it is rare for a court to disallow the taking of a deposition," Levingston, 320 F.R.D. at 524, "[h]eads of government agencies are not normally subject to deposition," Kyle Eng'g Co. v. Kleppe, 600 F.2d 226, 231 (9th Cir. 1979).  Plaintiffs do not dispute that Governor Newsom is a high-ranking government official to whom the apex doctrine applies.  The question therefore is whether plaintiffs have established "extraordinary

1    circumstances" warranting discovery directly from the Governor via deposition.  Thomas, 715

2    F. Supp. 2d at 1049.

3            As to the first factor, plaintiffs argue Governor Newsom has unique first-hand knowledge

4    of the facts at issue, as plaintiffs allege that he personally violated their constitutional rights by

5    signing the March 19, 2020 executive order and directing the CHP to refuse all applications for

6    permits to protest on Capitol grounds.  (ECF No. 61 at 9.)  According to plaintiffs, the CHP

7    directive was issued personally, not through intermediaries, so "[n]o one would be better

8    positioned to know the exact circumstances and content of these instructions than their source—

9    Governor Newsom."  (Id. at 10.)

10           Plaintiffs are correct that courts often look more favorably on depositions of high-ranking

11   officials when there are allegations that the official personally made the decision(s) at issue in the

12   litigation.  See, e.g., Bagley v. Blagojevich, 486 F. Supp. 2d 786, 789 (C.D. Ill. 2007) (denying

13   apex doctrine protection where plaintiffs alleged "the Governor was either the ultimate decision

14   maker or at least personally involved in the decision"); Freedom From Religion Found., Inc. v.

15   Abbott, No. A-16-CA-00233-SS, 2017 WL 4582804, at *11 (W.D. Tex. Oct. 13, 2017) (in

16   permitting limited deposition of governor, noting that "Governor Abbott is a party to this

17   litigation in his individual capacity, and his motive in requesting removal of FFRF's exhibit is

18   central to FFRF's claims against him").  But, as these cases themselves suggest, merely asserting

19   personal involvement in a contested decision is not sufficient, alone, to deny deposition

20   protection—particularly for those positioned at the very pinnacle of the governmental hierarchy,

21   such as the Governor here.

22           Typically, depositions of such individuals are allowed "when there are allegations that the

23   official acted with improper motive or acted outside the scope of his official capacity."  Coleman,

24   2008 WL 4300437, at *3-4 (surveying case law, including Bagley, and finding no extraordinary

25   circumstances based in part on lack of allegations of improper motive).  The court can find no

26   such allegations in plaintiffs' complaint.  Plaintiffs have alleged only that Governor Newsom

27   (1) signed the executive order to follow public health directives, without making exceptions for

28   First Amendment activities; and (2) (according to Officer Moos) "instructed the CHP that no

1   permits should be issued for protests, as they were not allowed under the [Executive] Order."[5]

2   (ECF No. 1 at 5-6, 8.)  These alleged acts fall firmly within the scope of a governor's typical

3   duties, and it is difficult to see how those actions might be improper initial reactions to the

4   outbreak of an unprecedented pandemic.

5          Even in asserting their First Amendment claims, the present complaint imputes no

6   discriminatory or otherwise improper motive to the Governor in taking these alleged actions.

7   (See ECF No. 1 at 10-13 (not alleging content- or viewpoint-based discrimination, but rather

8   overall chilling of speech and restriction of fundamental rights).)  Cf. FFRF, 2017 WL 4582804,

9   at *11 & n.24 (finding governor's "first-hand knowledge of his own motives" was reason to deny

10  protection where plaintiff "pled specific facts sufficient to support its allegation that Governor

11  Abbott acted with improper motive").  Although plaintiffs have recently raised arguments of

12  generalized viewpoint discrimination based on the State's post-filing enforcement of

13  COVID-related assembly restrictions, that is insufficient as it remains uncertain whether plaintiffs

14  attribute that discrimination to the Governor himself, or whether plaintiffs will actually assert

15  such claims in an amended complaint.  See In re F.D.I.C., 58 F.3d 1055, 1062 (5th Cir. 1995)

16  (requiring "strong showing of bad faith or improper behavior" before subjecting high-level

17  officials to deposition); FFRF, 2017 WL 4582804, at *11 n.24 (cautioning that "conclusory

18  allegations of bad faith are insufficient to demonstrate the necessity of deposing a high-ranking

19  government official"); United States v. Sensient Colors, Inc., 649 F. Supp. 2d 309, 323 (D.N.J.

20  2009) (holding bald assertions of bad faith insufficient to require agency officials to submit to

21  depositions, but allowing deposition where plaintiff alleged specific facts demonstrating bad

22  faith).

23         Turning to the second "extraordinary circumstances" factor, even assuming that the

24  information plaintiffs seek from Governor Newsom is relevant to their claims as presently

25  asserted, plaintiffs have not shown "that no other person possesses the information in question,

26

27  _____

    [5] Defendants dispute these allegations and contend that under then-existing State guidelines, the
28  CHP temporarily prohibited gatherings in April 2020, a prohibition that was soon lifted under
    revised guidelines. (ECF No. 60 at 2.)

1   particularly other members of the Governor's office or his administration, or that such

2   information may not be obtained by other means." Coleman, 2008 WL 4300437, at *4. "When

3   the Governor acts within the parameters of his official duties by, for example, issuing orders . . . ,

4   it is likely that other lower-ranking members of his office or administration would have relevant

5   information about his actions." Id. Thus far, plaintiffs have not attempted any less intrusive

6   discovery methods or sources for the information they seek. The only discovery that has taken

7   place is the exchange of initial disclosures, and the noticing of the above-described depositions.

8   (ECF No. 61 at 7.) At a bare minimum, no deposition should be required of Governor Newsom

9   until plaintiffs have first deposed the two CHP fact witnesses currently scheduled for deposition

10  later this month. And, as was the case in Coleman, the court is also confident that lower-ranking

11  members of the Governor's staff would have some knowledge of the Orders at issue,

12  notwithstanding plaintiffs' conclusory assertion that the Governor did not act through

13  "intermediaries" in ordering the CHP to deny all permit applications.

14      Plaintiffs have not described any efforts "to determine whether the information is

15  otherwise available and the extent to which their efforts failed to uncover such information."

16  Coleman, 2008 WL 4300437, at *4. Instead, plaintiffs argue that their proposed "limited

17  deposition" of the Governor will be less intrusive than a "bitterly drawn-out battle of

18  interrogatories, objections, and motions to compel." (ECF No. 61 at 9.) Plaintiffs state that they

19  "only intend to depose Governor Newsom as to his personal involvement with the decision

20  making process regarding his Executive Orders, his involvement with the Department of Public

21  Health's guidance and orders, his involvement with the decision making process of who was

22  essential and who was not essential, and his involvement regarding the regulation of gatherings

23  on the Capitol grounds since he proclaimed a state of emergency." (Id. at 10-11.)

24      Based on that wide range of proposed topics, alone, the court is unconvinced that

25  deposing the Governor will be the least burdensome method of discovery. Especially in this time

26  of heightened urgency and need for State leaders to focus on protecting public health, plaintiffs

27  must make at least some showing that other methods and sources of discovery have been tried

28  and proved unproductive. See Thomas, 715 F. Supp. 2d at 1048 (describing "greater duties and

10

1   time constraints" of high-ranking officials as rationale for apex protection).  Until plaintiffs can

2   show the fruitlessness of other discovery avenues, a protective order will remain appropriate to

3   prohibit the deposition of Governor Newsom in this case.

4        ***2.   Former CHP Commissioner Stanley & Former Public Health Officer Dr. Angell***

5        Plaintiffs argue the apex doctrine does not apply to bar the depositions of defendants

6   Stanley and Angell because they no longer serve in their former high-level governmental roles.[6]

7   (ECF No. 61 at 12.)  Former PHO Dr. Angell resigned on August 8, 2020, and former

8   Commissioner Stanley retired on November 17, 2020.  (Id.)  Plaintiffs urge that because neither

9   has moved on to another position with the State, there is no danger that a deposition will stymie

10  their official governmental duties. (Id.)  Defendants counter that subjecting former public officials

11  to deposition "might chill states' ability to recruit and retain such officials going forward and

12  might chill such officials in the performance of their duties."  (Id. at 7.)

13       Plaintiffs acknowledge, as they must, that the apex doctrine can apply to former officials

14  as well as current officials.  But they argue, and the court agrees, that several of the doctrine's

15  rationales apply with less force when the proposed deponent is not currently serving in office.

16  For instance, there is no longer a concern that requiring the person to sit for a deposition will pull

17  them away from other duties of public service.  See Moriah v. Bank of China Ltd., 72 F. Supp. 3d

18  437, 440 (S.D.N.Y. 2014) ("Although the doctrine applies to former officials, the fact that they

19  are not current high-ranking officials is a factor when considering whether the information can be

20  obtained through less burdensome means and whether the deposition will interfere with the

21  official's government duties.")  For that reason, some courts have held an official's resignation

22  reason enough not to grant him protection under the apex doctrine.  See Sec. & Exch. Comm'n v.

23  Comm. on Ways & Means of the U.S. House of Representatives, 161 F. Supp. 3d 199, 252

24  (S.D.N.Y. 2015) ("Given that Sutter has resigned from his position on the Subcommittee, he no

25  longer has government duties with which a deposition might interfere.").

26  ////

27

28  ---
    [6] Plaintiffs do not dispute that, as the heads of their respective State agencies, defendants Stanley and Angell were high-level officials while in office.

11

1    However, the rationale of protecting highly visible public servants from becoming targets

2    for unnecessary, or at worst harassing, discovery requests survives their departure from office.

3    See Apple v. Samsung, 282 F.R.D. at 263 (observing "tremendous potential for abuse or

4    harassment" when a party seeks to depose high-level official); Thomas, 715 F. Supp. 2d at

5    1049-50 (noting that the general rule prohibiting depositions of high-level officials applies to

6    former officials even though for them the "rationale based on interference with official duties is

7    absent").  Given this important surviving rationale, it remains equally appropriate to consider the

8    substantive reasons why the party seeks to depose a former official when determining whether

9    protection is warranted.  Cf. FFRF, 2017 WL 4582804, at *11 (noting in the context of deposing

10   current officials that courts "should consider . . . the substantive reasons for taking the

11   deposition").

12   Plaintiffs, however, provide almost no explanation of their reasons for wanting to depose

13   either Dr. Angell or former Commissioner Stanley.  Of course, both are named defendants in this

14   action; but a closer inspection of the complaint reveals next to no substantive allegations as to

15   how either personally violated plaintiffs' rights.  Commissioner Stanley is mentioned by name

16   only in the Parties section, which states his leadership of the CHP.  (ECF No. 1 at 4.)  And

17   outside of her introduction in the Parties section, Dr. Angell appears again only where plaintiffs

18   allege that she failed to include in her public health directives any exceptions for First

19   Amendment activities.  (Id. at 5.)  In the joint statement, plaintiffs argue that former

20   Commissioner Stanley has unique information unavailable from other sources because only he, as

21   the head of the CHP, "would have been in [a] position to receive the order from Governor

22   Newsom and implement it."  (ECF No. 61 at 10 n.3.)  The hypothetical phrasing of this statement

23   suggests that plaintiffs presently have no factual basis for their belief that the Governor ordered

24   Commissioner Stanley to deny all permit applications.  And even if they did, it is not readily

25   apparent how Commissioner Stanley's testimony about such an order would help plaintiffs prove

26   any of their claims.  Again, the complaint presently contains no allegation of viewpoint

27   discrimination, and plaintiffs do not explain what defendant Stanley's testimony would add

28   beyond the already established fact of the executive order's issuance and immediate impact on

12

1   protest activities at the Capitol.  Cf. Coleman, 2008 WL 4300437, at *3 (requiring showing that

2   proposed high-ranking deponents "possess personal knowledge of facts critical to the outcome of

3   the proceedings").

4         Plaintiffs make no attempt in the joint statement to justify the deposition of Dr. Angell,

5   aside from maintaining that she no longer has other pressing government duties.  (ECF No. 61

6   at 12.)  At the hearing, plaintiffs' counsel argued that Dr. Angell's post-filing statements

7   regarding the First Amendment rights of Black Lives Matter protestors demonstrates the need to

8   depose her in order to craft a possible amended complaint or motion for preliminary injunction.

9   The court remains unconvinced.  At present, this action challenges only Dr. Angell's signing of

10   the March 19, 2020 public health directive.  There is no suggestion that Dr. Angell was

11   contemplating Capitol grounds demonstrations when she did so—indeed, she seems to be named

12   as a defendant only for not having considered the First Amendment implications of her order.  As

13   the directive's existence and its contents are self evident, it is difficult to see how Dr. Angell's

14   deposition would benefit plaintiffs' case.  Cf. Coleman, 2008 WL 4300437, at *3.  The court is

15   unwilling at this juncture to countenance what would amount to a fishing expedition regarding

16   Dr. Angell's post-complaint conduct.

17         Because the apex doctrine applies beyond the end of a government official's term, albeit

18   with less force, plaintiffs must provide a reasonably firm basis for the court to assess whether

19   deposition is justified—so as to guard against unnecessarily haranguing former officials.  As

20   plaintiffs have not done so here, the court grants the request for a protective order for defendants

21   Stanley and Angell.

22        *3.  Dr. Watt*

23         Defendants assert a different basis for precluding—or at least postponing—the deposition

24   of Dr. James Watt, the current Chief of California's Division of Communicable Disease Control.

25   They argue that the court need not decide whether the apex doctrine applies to Dr. Watt at this

26   point because any attempt to depose Dr. Watt is premature, given that he has offered only expert

27   opinion testimony and the period for expert discovery in this case has not yet begun.  (ECF

28   No. 61 at 8 n.1.)  Plaintiffs counter that Dr. Watt has been disclosed as a factual witness by virtue

1    of defendants' initial disclosures and they should not be forced to wait until expert discovery to

2    depose him just because he has special knowledge, education, or experience.  (Id. at 13.)

3          Although it is unclear to the court exactly what discoverable information plaintiffs expect

4    to elicit from Dr. Watt, defendants have not provided in this motion an adequate reason for

5    precluding or delaying his deposition.  As plaintiffs point out, Dr. Watt is "advising [the State] on

6    the COVID-19 response and [is] familiar with the guidance issued by the CDPH and the State of

7    California Executive Order N-33-20" (ECF No. 13 (Watt Decl.) ¶ 8); and defendants listed Dr.

8    Watt on their initial disclosures.  The court finds this sufficient to establish a likelihood that his

9    testimony would be relevant to plaintiffs' claims, and defendants simply have not carried their

10   burden to show good cause for making his deposition contingent upon his later designation as an

11   expert witness.  See Fed. R. Civ. P. 26(c)(1) ("good cause" requirement for protective orders).

12   Defendants cite no case in support of their position, and it strikes the court as unfair to block

13   discovery from an individual likely to possess discoverable information just because that person

14   might later serve as an expert witness at trial.[7]  Accordingly, the court declines to issue a

15   protective order forbidding the deposition of Dr. Watt.

16   **CONCLUSION**

17         For these reasons, IT IS ORDERED THAT:

18   1.  Defendants' motion for protective order (ECF No. 59) is GRANTED IN PART and

19       DENIED IN PART.  The court forbids the deposition of Governor Newsom, Stanley

20       Warren, and Dr. Sonia Angell on the present record.  The court declines to issue a

21       protective order to block the deposition of Dr. James Watt; and

22   ////

23   ////

24   ////

---

25   [7] Despite briefly stating in a footnote that Dr. Watt is also a senior public health official,

26   defendants expressly did not assert apex doctrine protection for Dr. Watt in the joint statement.
     (ECF No. 61 at 8 n.1 ("There is no need to decide whether and how the Apex Doctrine applies to

27   Dr. Watt at this point . . . .").  Defense counsel's attempt to assert apex protection for Dr. Watt at
     the hearing comes too late.  Unlike with the depositions discussed above, the burden of justifying

28   the denial of Dr. Watt's deposition rests solely on defendants.

2. Plaintiffs' motion to compel these depositions (ECF No. 58) is DENIED without prejudice.

IT IS SO ORDERED.

Dated:  January 7, 2021

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

19.give.0852