ROB BONTA
Attorney General of California
PAMELA J. HOLMES
MARK R. BECKINGTON
Supervising Deputy Attorneys General
ANNA FERRARI, State Bar No. 261579
JAMES W. WALTER, State Bar No. 173481
Deputy Attorneys General
  1300 I Street, Suite 125
  P.O. Box 944255
  Sacramento, CA 94244-2550
  Telephone:  (916) 210-7542
  Fax:  (916) 322-8288
  E-mail:  James.Walter@doj.ca.gov
*Attorneys for Defendants California Governor
Gavin Newsom, California Attorney General Rob
Bonta, California Highway Patrol Commissioner
Amanda Ray, and California State Public Health
Officer Tomas Aragon, all sued in their official
capacities*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **RON GIVENS, an individual; CHRISTINE BISH,  an individual,**<br><br>Plaintiffs,<br><br>v.<br><br>**GAVIN NEWSOM, in his capacity as Governor of California; XAVIER BECERRA, in his capacity as Attorney General of California; WARREN STANLEY, in his capacity as the Commissioner of the California Highway Patrol; SONIA ANGELL, in her capacity as the State Public Health Officer,**[1]<br><br>Defendants. | 2:20-cv-00852-JAM-CKD<br><br>**DEFENDANTS' REPLY IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>**[Fed. R. Civ. P. 56]**<br><br>Dept:           6<br>Judge:          Hon. John A. Mendez<br>Date:           August 9. 2022<br>Time:           1:30 pm<br><br>**Action Filed: April 27, 2020** |

---

[1] Amanda Ray, California Highway Patrol Commissioner, succeeded former Commissioner Warren Stanley; Tomás Aragón, California State Public Health Officer, succeeded Erica Pan, former Acting California Public Health Officer; Rob Bonta, California Attorney General, succeeded former Attorney General Xavier Becerra. Fed. R. Civ. P. 25(d) (an "officer's successor is automatically substituted as a party").

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................................... 1

ARGUMENT ........................................................................................................................... 1

I.      The En Banc Decision in Brach Requires that this Case Be Dismissed as
        Moot ......................................................................................................................... 1

II.     Plaintiffs Have Failed to Establish a Violation of the Free Speech Clause ........... 3

        A.      The Stay-at-Home Order Is Directed at Conduct, Not Expressive
                Activity ......................................................................................................... 3

        B.      Plaintiffs Fail to Establish that the Stay-at-Home Order Is
                Overbroad in a Substantial Number of Applications ................................... 4

        C.      The Stay-at-Home Order Is Not the Kind of Content-Based
                Restriction that Is Presumptively Unconstitutional ..................................... 5

        D.      The Stay-at-Home Order Was Narrowly Tailored and Left Open
                Adequate Alternate Channels ....................................................................... 7

III.    The Freedom of Assembly Claim Fails ................................................................... 7

IV.     The Freedom to Petition Claim Fails ...................................................................... 8

V.      The Due Process Claim Fails ................................................................................... 9

CONCLUSION ...................................................................................................................... 10

i

Defs.' Reply in Support of Cross-Mot. For Summ. J. (2:20-cv-00852)

**TABLE OF AUTHORITIES**

**Page**

CASES

*Arcara v. Cloud Books, Inc.*
478 U.S. 697 (1986) ................................................................................................ 3

*Boos v. Barry*
485 U.S. 312 (1988) ................................................................................................ 8

*Borough of Duryea, Pa. v. Guarnieri*
564 U.S. 379 (2011) ................................................................................................ 8

*Brach v. Newsom*
__ F.4th __, 2022 WL 2145391 (9th Cir. Jun. 15, 2022) (en banc) ................................ 1, 2, 3

*Broadrick v. Oklahoma*
413 U.S. 601 (1973) ................................................................................................ 4

*Brown v. Hartlage*
456 U.S. 45 (1982) ................................................................................................ 6

*Buckley v. Valeo*
424 U.S. 1 (1976) ................................................................................................ 6, 7

*Eden, LLC v. Justice*
36 F.4th 166, (4th Cir. 2022) ................................................................................... 3

*Givens v. Newsom*
459 F. Supp. 3d 1302 (E.D. Cal. 2020) ....................................................................... 7, 8

*Hawse v. Page*
7 F.4th 685 (8th Cir. 2021) ...................................................................................... 3

*Long Beach Area Peace Network v. City of Long Beach*
574 F.3d 1011 (9th Cir. 2009) .................................................................................. 6

*Minneapolis Star & Tribune Co. v. Minnesota Commissioner of Revenue*
460 U.S. 575 (1983) ................................................................................................ 4

*New York v. Ferber*
458 U.S. 747 (1982) ................................................................................................ 4

*Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*
460 U.S. 37 (1983) ................................................................................................ 8

*Resurrection Sch. v. Hertel*
35 F.4th 524 (6th Cir. 2022) ................................................................................... 1, 3

ii

1

**TABLE OF AUTHORITIES**
(continued)

2

<u>Page</u>

3

*Roman Catholic Diocese of Brooklyn v. Cuomo*
__ U.S. __, 141 S. Ct. 63 (2020) (per curiam) ........................................................ 3

4

5

*Tandon v. Newsom*
__ U.S. __, 141 S. Ct. 1294 (2021) (per curiam) .................................................. 3

6

*Thomas v. City of Chicago Park. Dist.*
534 U.S. 316 (2002) ........................................................................................... 5, 6

7

8

*Washington State Grange v. Washington State Republican Party*
552 U.S. 442 (2008) ............................................................................................... 5

9

10

STATUTES

11

Cal. Code Regs., tit. 13, § 1851(c) ............................................................................ 5

12

CONSTITUTIONAL PROVISIONS

13

First Amendment............................................................................................. *passim*

14

OTHER AUTHORITIES

15

CalMatters, "'Hella connected': How California lawmakers are governing from
home," Apr. 8, 2020, available at
https://calmatters.org/health/coronavirus/2020/04/coronavirus-california-
legislature-working-from-home-remote-government/ (as of Jun. 19, 2022) ........................... 6

16

17

18

19

20

21

22

23

24

25

26

27

28

iii

**INTRODUCTION**

On June 15, 2022, after the parties filed their pending cross-motions for summary judgment, the Ninth Circuit issued an en banc opinion that definitively resolves any question about whether this case is moot.  *See Brach v. Newsom*, __ F.4th __, 2022 WL 2145391 (9th Cir. Jun. 15, 2022) (en banc).  *Brach*, like this case, involved constitutional challenges to long-rescinded COVID-preventing restrictions on physical gatherings.  The Ninth Circuit held that, in light of the restrictions' rescission—and given the availability of new approaches (such as vaccination) for handling future outbreaks—the challenges were moot, that no exception to mootness applied, and that federal courts were therefore without jurisdiction.  That opinion removes any doubt whether the present case is moot. Plaintiffs' case must be dismissed.

But even if that jurisdictional problem could be ignored, Plaintiffs' claims would fail on the merits.  The challenged orders survive constitutional review under any standard.  Defendants are entitled to summary judgment.

**ARGUMENT**

**I.     THE EN BANC DECISION IN *BRACH* REQUIRES THAT THIS CASE BE DISMISSED AS MOOT**

When Defendants filed their cross-motion for summary judgment, there was no Ninth Circuit decision specifically addressing the potential mootness of constitutional challenges to COVID restrictions.  Defendants' arguments were therefore based on general principles of mootness and persuasive precedents from other Circuits, such as *Resurrection Sch. v. Hertel*, 35 F.4th 524 (6th Cir. 2022).  *See* Defs.' Cross-Mot., ECF No. 101, at 29-30.  Plaintiffs' response was not to distinguish that precedent, but rather to argue that out-of-circuit authority was not "binding" and should not be followed by this Court.  Pls.' Opp./Reply, ECF No. 106, at 20.

Now, however, there is binding authority.  *See Brach*, 2022 WL 2145391.  And that Ninth Circuit precedent requires that this matter be dismissed.

*Brach* considered constitutional challenges to California's COVID restrictions on in-person schooling.  2022 WL 2145391 at \*\*2–4.  Although the restrictions had been rescinded in July 2021, the plaintiffs in *Brach* (like the plaintiffs here) argued that similar restrictions could be

1

1    reimposed if COVID conditions worsened.  *Id.* at *7.  The en banc Ninth Circuit rejected those

2    arguments and held that there was no longer the "live controversy necessary for Article III

3    jurisdiction." *Id.* at *4.  Because the plaintiffs sought only declaratory and injunctive relief, and

4    the school-closure orders had already been lifted, there was no "effective relief that can be

5    granted by the court." *Id.*  Although the plaintiffs contended that the voluntary cessation

6    exception applied and the State retained authority to reimpose the requirements, the en banc Court

7    rejected that argument.  *See id.* at *7 (noting that the State had "renounced any intention of

8    closing its schools again, the school closure orders were temporary measures designed to expire

9    by their own terms, and the schools have been operating in-person for a year").  The State's new

10   approach to COVID mitigation was "not [] a temporary move to sidestep the litigation." *Id.* at *6.

11   Importantly, the "'availability of vaccines and other measures to combat the virus have led to a

12   significant change in the relevant circumstances'" reducing the likelihood that the more

13   restrictive, earlier measures would be reimposed.  *Id.* at *6 (quoting *Lighthouse Fellowship*

14   *Church v. Northam,* 20 F.4th 157, 162–64 (4th Cir. 2021)).  For similar reasons, *Brach* also held

15   that the mootness exception for matters capable of repetition, yet evading review, did not apply.

16   2022 WL 2145391 at *6.

17          *Brach* controls this case.  Plaintiffs concede that there has been no state-imposed

18   prohibition on demonstrating on the Capitol grounds since May 25, 2020 (that is, for more than

19   two years), and no COVID-related attendance caps since June 16, 2021.  Defs.' Resps. to Pls.'

20   Facts, ECF 97-1, at Nos. 25-28, 29.  As in *Brach,* "there is no longer any state order for the court

21   to declare unconstitutional or to enjoin. It could not be clearer that this case is moot."  2022 WL

22   2145391 at *4.  Plaintiffs contend that similar restrictions may be re-imposed in the future

23   because the pandemic is "uncertain" and the Governor's emergency powers remain in effect.

24   Pls.' Opp./Reply at 19.  *Brach* makes clear, however, that such "speculative contingenc[ies]"

25   about the future course of the pandemic, and the Governor's power to issue executive orders do

26   not save a challenge from mootness.[2]  2022 WL 2145391 at *7 (quoting *Bos. Bit Labs, Inc. v.*

27          [2] In so holding, *Brach* distinguished *Roman Catholic Diocese of Brooklyn v. Cuomo*, __
28   U.S. __, 141 S. Ct. 63 (2020) (per curiam), and *Tandon v. Newsom*, __ U.S. __, 141 S. Ct. 1294,

                                                    2

*Baker*, 11 F.4th 3, 10 (1st Cir. 2021)).  The Ninth Circuit has now joined numerous others in concluding that challenges to early COVID-19 restrictions are now moot.  *See Eden, LLC v. Justice*, 36 F.4th 166, 169 (4th Cir. 2022) (concluding challenge to early pandemic COVID-19 restriction was moot in light of changed circumstances); *Resurrection Sch. v. Hertel*,  35 F.4th 524 (same); *Hawse v. Page*, 7 F.4th 685, 692–94 (8th Cir. 2021) (same).  This case must be dismissed.

## II.    PLAINTIFFS HAVE FAILED TO ESTABLISH A VIOLATION OF THE FREE SPEECH CLAUSE

### A.    The Stay-at-Home Order Is Directed at Conduct, Not Expressive Activity

Defendants' opening motion explained that the Stay-at-Home Order is subject only to rational basis review because it is directed at conduct—the act of staying in one's home—while any resulting burden on speech is merely incidental.[3]  In response, Plaintiffs contend incorrectly that the First Amendment should be applied in the same way to regulations that directly burden expression as it does to regulations of conduct that only incidentally burden expression.  Pls.' Opp./Reply at 3.  But "every civil and criminal remedy imposes some conceivable burden on First Amendment protected activities," and this quality on its own does not necessarily "implicate the First Amendment."  *Arcara v. Cloud Books, Inc.*, 478 U.S. 697, 706 (1986).

Under *Arcara*, general laws that do not target expressive activities, and instead aim at "nonspeech," only merit a First Amendment inquiry "where it was conduct with a significant expressive element that drew the legal remedy in the first place, . . . or where [the law] has the inevitable effect of singling out those engaged in expressive activity."  478 U.S. at 706–07.  Neither applies here.  The conduct that "drew" enforcement of the Stay-at-Home Order is the act of leaving one's house to engage in activities not designated as part of critical infrastructure,

---

1297 (2021) (per curiam), on their facts for reasons applicable here.  Although the restrictions on in-person religious worship had changed multiple times to become, at various points, both more and less restrictive, the changes to allow outdoor gatherings have been "steady and consistent."  As in *Brach*, the restrictions here, which were limited in time and ultimately rescinded, present none of the concerns that animated the decisions in *Roman Catholic Diocese* and *Tandon*.

[3] Plaintiffs focus exclusively on the Stay-at-Home Order, failing to respond to Defendants' arguments on the validity of CHP's permit denials relating to the Capitol grounds.  *See generally* Pls.' Opp./Reply; *compare with* Defs.' Cross-Mot. at 12–17.  This brief will therefore address Plaintiffs' arguments concerning the Stay-at-Home Order.  Defendants' position concerning CHP's permit denials should be treated as unrebutted.

which increased the potential to spread COVID during the early stages of the pandemic, a time when vaccines and other health interventions were still being developed.  The Stay-at-Home Order principally regulated a host of non-expressive conduct, including reporting to work in person (in non-critical infrastructure sectors), attending social gatherings, and obtaining personal services.

Nor did the Stay-at-Home Order have the inevitable effect of singling out those engaged in expressive activity.  To illustrate, in *Minneapolis Star & Tribune Co. v. Minnesota Commissioner of Revenue*, 460 U.S. 575 (1983), the Supreme Court struck down a state tax imposed on the sale of large quantities of newsprint and ink.  Although technically directed at conduct, not speech, the tax, which had no parallel in the state tax code, imposed a unique and disproportionately large burden upon newspapers exercising the constitutionally protected freedom of the press.  *Id.* at 582–83.  In contrast, the Stay-at-Home Order applied to the entire population of the State, in all of their activities—the bulk of which had no expressive aspect at all.  In this way, it did not single out parties engaged in expressive conduct.

### B. Plaintiffs Fail to Establish that the Stay-at-Home Order Is Overbroad in a Substantial Number of Applications

Plaintiffs contend that the Stay-at-Home Order is facially overbroad because "a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep."  Pls.' Opp./Reply at 4 (internal citations and quotations omitted).  Facial challenges for overbreadth are "strong medicine . . . employed by the Court sparingly and only as a last resort."  *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973).  Except in narrow circumstances, First Amendment challenges are subject to the ordinary restrictions on third-party standing, meaning that a plaintiff must show that a challenged law operated unconstitutionally as to him, rather than as to others.  *New York v. Ferber*, 458 U.S. 747, 767–69 (1982).  Thus, courts generally do not apply this analysis, which is unique to First Amendment facial challenges for overbreadth, where "the parties fail to describe the instances of arguable overbreadth of the contested law."  *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 450 n. 6 (2008); *see also id.* at 449–50 ("In determining whether a law is facially invalid, we must

4

1  be careful not to go beyond the statute's facial requirements and speculate about 'hypothetical' or

2  'imaginary' cases.").

3      Here, Plaintiffs only offer one non-speculative example of arguable overbreadth:  The

4  denial of their respective applications for permits to demonstrate on the grounds of the Capitol.

5  But as we have explained, that application of the restriction was constitutionally valid, since

6  gatherings (expressive or otherwise) posed unacceptable risks of disease during the pandemic's

7  earliest days and based on the then-limited understanding of disease transmission.[4]  Plaintiffs'

8  contention that the Stay-at-Home Order prohibited individuals and residents of the same

9  households from engaging in risk-free public demonstrations should be rejected as an

10  unsupported hypothetical.[5]

11      **C.   The Stay-at-Home Order Is Not the Kind of Content-Based Restriction
            that Is Presumptively Unconstitutional**

12

13      Plaintiffs ask the Court to presume the invalidity of the Stay-at-Home Order because it

14  constitutes a prior restraint.  Pls.' Opp/Reply at 5–6.  But the fact that a permitting scheme limits

15  access to a public forum does not render it an unconstitutional prior restraint.  Defs.' Cross-Mot.

16  at 23–24.  The Supreme Court has recognized that content-neutral permitting schemes are not

17  unconstitutional prior restraints.  *See Thomas v. City of Chicago Park. Dist.*, 534 U.S. 316 (2002).

18  In *Thomas*, the Supreme Court upheld such a restriction, the purpose of which was "not to

19  exclude communication of a particular content, but to coordinate uses of limited space" consistent

20  with requirements of public safety.  Here, as in *Thomas*, "[t]he picnicker and soccer-player, no

21  less than the political activist," were subject to CHP's temporary moratorium, and CHP had no

---

22      [4] Plaintiffs speculate that the Stay-at-Home Order swept more broadly than that because it
23  "precluded even a single person from leaving their home, while wearing a mask, carrying a sign
    (and not speaking), and conveying their message," which "would present no risk of transmission
24  of the coronavirus."  Pls.' Opp./Reply at 8; *see also id.* at 9 (arguing that the Stay-at-Home Order
    was overbroad in restricting demonstrators from the same household).  But even a protest of one
25  has an intended audience.  Indeed, the requirement that a single individual obtain a permit to
    demonstrate on State property recognizes that such activities "ha[ve] the effect, intent, or
26  propensity to draw a crowd of onlookers."  Cal. Code Regs., tit. 13, § 1851(c).
        [5] For similar reasons, contrary to Plaintiffs' argument (*see* Pls.' Opp./Reply at 10), it was
27  unnecessary for Defendants' expert witness, Dr. Rutherford, to analyze the specific transmission
    risks posed by demonstrations by a single person or small group—especially considering that
28  Plaintiffs requested to hold events with no fewer than 500 and 1000 attendees.

1    discretion to grant permits during the period in question based on the content of speech, or even

2    the purpose of the intended gathering.  *See Thomas*, 534 U.S. at 322.

3         Plaintiffs also repeat the argument that the Stay-at-Home Order should be presumed invalid

4    due to its impact on political speech in a public forum.[6]  Pls.' Opp./Reply at 4–5.  Again, these

5    heightened protections serve as safeguards against **content-based** restrictions.  *See Brown v.*

6    *Hartlage*, 456 U.S. 45, 53 (1982) (First Amendment has its "fullest and most urgent" application

7    in the case of regulation of the content of political speech).  Further, as *Long Beach Area Peace*

8    *Network v. City of Long Beach*, 574 F.3d 1011 (9th Cir. 2009), cited by Plaintiffs, recognizes,

9    "content-neutral time, place and manner restrictions may overcome the presumption of

10   invalidity." *Id.* at 1021.  Another Supreme Court opinion cited by Plaintiffs, *Buckley v. Valeo*,

11   424 U.S. 1 (1976), does not hold otherwise.  In invalidating a law limiting federal campaign

12   contributions and expenditures, *Buckley* expressly distinguished "cases [that] stand for the

13   proposition that the government may adopt reasonable time, place, and manner regulations, which

14   do not discriminate among speakers or ideas, in order to further an important governmental

15   interest unrelated to the restriction of communication." *Id.* at 18.  Thus, precedents relied upon

16   by Plaintiffs make clear that these presumptions of invalidity are concerned with content-based

17   restrictions, not content-neutral time, place, and manner restrictions like the Stay-at-Home Order.

18

19

20

21

---

22   [6] Responding to Plaintiffs' repeated assertions that it was essential for their demonstrations to take place outside the Capitol in order "to reach their intended audience—i.e., state lawmakers," Pls.' Cross-Mot., ECF 92-1, at 16, Defendants noted that both houses of the

23   State Legislature took an unscheduled, pandemic-related recess from March 20, 2022, through May 4 2022.  See Defs.' RJN, ECF 100, at Exs. 15-17. Plaintiffs argue on reply that it would be

24   "absurd" to require the intended audience be physically present to find a First Amendment violation.  Pls.' Opp/Reply at 5.  Plaintiffs miss the point:  The same unprecedented public health

25   risks that led to temporary restrictions on public gatherings outside the Capitol also led the Senate and Assembly to pivot to remote work arrangements.  *See* Defs.' Cross-Mot. at 17, 24;

26   CalMatters, "'Hella connected': How California lawmakers are governing from home," Apr. 8, 2020, available at https://calmatters.org/health/coronavirus/2020/04/coronavirus-california-

27   legislature-working-from-home-remote-government/ (as of Jun. 19, 2022). Thus, Plaintiffs' claims that the demonstrating at the Capitol was the only effective way to reach their intended

28   audience of legislators ring hollow.

1
2

**D.   The Stay-at-Home Order Was Narrowly Tailored and Left Open Adequate Alternate Channels**

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21

In their narrow-tailoring and alternative-channels analysis, Plaintiffs studiously avoid consideration of the public health context in which the Stay-at-Home Order issued.  *See* Pls.' Opp./Reply at 2, n. 2 (objecting to Defendants' evidence regarding the extent of COVID transmission as "irrelevant" to the narrow tailoring analysis); *id.* at 9 (arguing that the Stay-at-Home Order is broader in its effects than measures about distribution of handbills and pamphlets that have been struck down as overbroad); *id.* at 14 (arguing that Defendants do not explain why the pandemic context is relevant to the alternative-channel analysis).  But as this Court has held, although "a blanket ban on the issuance of CHP permits for an unspecified period does not intuitively ring of narrow tailoring," "'narrow' in the context of a public health crisis is necessarily wider than usual."  *Givens v. Newsom*, 459 F. Supp. 3d 1302, 1313 (E.D. Cal. 2020). The pandemic altered the risks associated with large public gatherings, *see* Defs.' Cross-Mot. at 21–22, and state health officials determined that, to slow the rate of COVID-19 infections, gatherings—especially of the large scale Plaintiffs intended—should temporarily cease.  Thus, contrary to Plaintiffs' argument, the question at hand is not whether a more tailored alternative was theoretically possible, Pls.' Opp./Reply at 11, or whether an alternative channel of communication would have functioned as a perfect substitute for in-person demonstration, *id.* at 14, but whether there is evidence that these alternatives would have ensured comparable levels of safety.  Because Plaintiffs have failed to present any such evidence, Defendants are entitled to summary judgment on the free speech claim.

22

**III.   THE FREEDOM OF ASSEMBLY CLAIM FAILS**

23
24
25
26
27
28

In Defendants' cross-motion for summary judgment, Defendants established that Plaintiffs' assembly claims rise and fall with their free speech claims.  In opposition, Plaintiffs contend, that their assembly claim "is uniquely different than a speech claim, warranting a separate analysis," without citing to any authority.  Pls.' Opp., ECF No., 106, at 17.  They also argue Defendants have failed to apply an analytically distinct standard for assembly claims, without specifying what that standard should be.  But as this Court has already recognized, the right to freedom of

7

assembly has largely been subsumed by the right to expressive association, and "[p]arties bringing an expressive-association claim under the First Amendment must demonstrate that they are asserting their right to associate 'for the purpose of engaging in those activities protected by the First Amendment—speech, assembly, petition for the redress of grievances, and the exercise of religion.'" *Givens*, 459 F. Supp. 3d at 1314 (quoting *Roberts v. U.S. Jaycees*, 468 U.S. 609, 618 (1984)). The Supreme Court regularly analyzes claims resting on the right of assembly by applying a free speech analysis, including for test for time, place and manner restrictions. *See e.g.*, *Boos v. Barry*, 485 U.S. 312, 331–32 (1988) (analyzing ordinance barring groups of three or more from congregating within 500 feet of buildings used by foreign governments as a time, place, and manner restriction); *Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*, 460 U.S. 37, 45 (1983) (holding that the same analysis applies to expressive activities in public fora that are traditionally devoted to both "assembly and debate").

Plaintiffs cannot even sustain their own argument that their free assembly claim should be analyzed independently. They themselves argue instead that the Stay-at-Home Order violates their right to free assembly for the same reasons as Plaintiffs' free speech claim. Pls.' Opp./Reply at 17. Accordingly, the Court should grant summary judgment to Defendants on Plaintiffs' free assembly claim for the same reasons as Plaintiffs' free speech claim.

## IV.   THE FREEDOM TO PETITION CLAIM FAILS

Defendants established in their opening memorandum that Plaintiffs' Petition Clause claim, like their free assembly claim, is analytically indistinct from their speech claim. *See Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 388 (2011) (while courts "should not presume there is always an essential equivalence in the two Clauses or that Speech Clause precedents necessarily and in every case resolve Petition Clause claims[,]" "[i]nterpretation of the Petition Clause must be guided by the objectives and aspirations that underlie the right."). In opposition, Plaintiffs contend that their "speech claims are focused on the inability to speak at all on the Capitol grounds," while the petition claim is aimed at "specified grievances specific to COVID-19 measures taken by the California government." Pls.' Opp./Reply at 18. But any alleged grievance on the part of Plaintiffs regarding the State's COVID-19 response is still part and parcel

8

1 of their concerns about their purported inability to speak out against these measures on the

2 Capitol grounds.  *See* Compl., ECF No. 1, at ¶ 68 (alleging that the Petition Clause violation is

3 premised upon the Stay-at-Home Order and Defendants' enforcement thereof).

4      Plaintiffs highlight the location of their planned Petition Clause activities—the Capitol

5 grounds—as if to demonstrate that petitioning government was a separate objective from

6 Plaintiffs' speech activities.  *See* Pls.' Opp./Reply at 18.  This fact only underscores how

7 Plaintiffs' petition claim shares the same factual predicate as their speech and assembly claims.

8 Accordingly, summary judgment on the Petition Clause claims should be granted in favor of

9 Defendants.

10 **V.     THE DUE PROCESS CLAIM FAILS**

11      Plaintiffs do not oppose Defendants' motion for summary judgment as to their fourth claim

12 for relief for violation of due process.  *See* Defs.' Cross-Mot. at 26–28; *and see generally* Pls.'

13 Opp./Reply.  Summary judgment should be granted in Defendants' favor on this claim for relief.

14 / / /

15 / / /

16 / / /

17 / / /

18 / / /

19 / / /

20 / / /

21 / / /

22 / / /

23 / / /

24 / / /

25 / / /

26 / / /

27

28

9

**CONCLUSION**

For the foregoing reasons and the reasons set forth in the memorandum in support of Defendants' opening cross-motion, the Court should dismiss this case as moot or, in the alternative, grant summary judgment in favor of Defendants on all pending claims.

Dated:  June 28, 2022

Respectfully submitted,

ROB BONTA
Attorney General of California
PAMELA J. HOLMES
MARK R. BECKINGTON
Supervising Deputy Attorneys General
ANNA FERRARI
Deputy Attorney General

*/s/ James Walter*

JAMES WALTER
Deputy Attorney General
*Attorneys for Defendants California Governor Gavin Newsom, California Attorney General Rob Bonta, California Highway Patrol Commissioner Amanda Ray, and California State Public Health Officer Tomas Aragon, all sued in their official capacities*

LA2020600444
Givens Final REPLY with TOCTOA ISO Cross Motion SummJudg (mb).docx

Defs.' Reply in Support of Cross-Mot. For Summ. J. (2:20-cv-00852)

# CERTIFICATE OF SERVICE

Case Name: **Ron Givens, et al v. Gavin Newsom, et al.**

Case No. **2:20-cv-00852**

I hereby certify that on June 28, 2022, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**DEFENDANTS' REPLY IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on June 28, 2022, at Los Angeles, California.

_____
Beth L. Gratz
Declarant

*Beth L. Gratz*
_____
Signature

LA2020600444
65233925.docx