D. GILL SPERLEIN (SBN: 172887)
gill@sperleinlaw.com
LAW OFFICE OF D. GILL SPERLEIN
345 Grove Street
San Francisco, CA 94102
Telephone: (415) 404-6615
Facsimile: (415) 404-6616

HARMEET K. DHILLON (SBN: 207873)
harmeet@dhillonlaw.com
MARK P. MEUSER (SBN: 231335)
mmeuser@dhillonlaw.com
DHILLON LAW GROUP INC.
177 Post Street, Suite 700
San Francisco, California 94108
Telephone: (415) 433-1700
Facsimile: (415) 520-6593

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT FOR

# THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **RON GIVENS,** an individual; **CHRISTINE BISH**, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> **GAVIN NEWSOM**, in his official capacity as the Governor of California; **ROB BONTA**, in his official capacity as the Attorney General of California; **AMANDA RAY**, in her official capacity as the Commissioner of the California Highway Patrol; **TOMAS ARAGON**, in his capacity as the State Public Health Officer, <br><br> Defendants. | Case Number: 2:20-cv-00852-JAM-CKD <br><br> **PLAINTIFFS' SURREPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT** <br><br> Judge: Honorable John A. Mendez <br> Action Filed: April 27, 2020 <br> Hearing Date: August 9, 2022 <br> Hearing Time: 1:30 p.m. |

**PLAINTIFFS' SURREPLY IN SUPPORT
OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT**

### I.     Introduction

On June 15, 2022, in a 6-5 en banc decision, the Ninth Circuit concluded that a case was moot in a lawsuit involving State officials requiring the closure of schools as a part of the State's COVID-19 pandemic response. *Brach v. Newsom*, No. 20-56291, ---F.4th----, 2022 WL 2145391 (9th Cir. June 15, 2022). Defendants have argued that *Brach* applies here and, thus, this matter is therefore moot. Def. Reply Brf. 1-3. *Brach*, however, is plainly distinguishable. In *Brach*, the school closure executive order contained both a sunset provision and a clause that would self-repeal on a specified date. 2022 WL 2145391 at *7. The Stay-at-Home Order at issue here has no such provisions, making the Stay-at-Home Order at issue here qualify for two mootness exceptions. Due to this distinguishing factor, the narrow majority in *Brach* is unlikely to draw the same conclusions with the Stay-at-Home Order. Nor should this Court.

### II.    Argument

*Brach* involved a challenge to the State's closure of schools to in-person learning in response to the COVID-19 pandemic for the 2020-21 school year. 2022 WL 2145391 at *4. Over the summer of 2020, the State implemented a "2020-21 Reopening Framework," which determined "when and how to implement in-person instruction." *Id. at *3*. The framework set out criteria that allowed schools to permanently reopen to in-person instruction once a certain COVID-19 transmission rate was accomplished. *Id*. "Importantly, once a school reopened under the 2020-21 Reopening Framework, it was not required to close again." *Id*. As the Ninth Circuit characterized the 2020-21 Reopening Framework, it "made clear that no school would be required to close again after reopening." *Id*. at *3, n.1.

After schools re-opened to in-person learning on a statewide basis, the State argued that the case was moot and that the "voluntary cessation" and "capable of repetition but evading review" exceptions to the mootness doctrine did not apply. Six of the eleven judges on the Ninth Circuit en banc panel agreed, basing their conclusion on two primary grounds. *First*, "the State did not abandon

Plaintiffs' Surreply Summ. Judgment                                Case No. 2:20-cv-00852-JAM-CKD

1

its [allegedly unlawful policy] after suit was filed." *Id.* at *5. "Rather, the 2020–21 Reopening Framework, which was adopted before the litigation, *automatically* permitted schools to reopen permanently once their local areas achieved certain COVID-19 benchmarks." *Id.* (emphasis added). *Second*, both the executive and the legislature had demonstrated a commitment to keeping schools open in the future. In particular, Governor Newsom had "unequivocally renounce[d] the use of school closure orders in the future" and the legislature had allowed a law allowing for remote instruction to automatically expire by its terms. *Id.* at *5-6. For these reasons, the State had satisfied its burden of demonstrating that "the challenged behavior cannot reasonably be expected to recur." *Id.* (cleaned up).

Here, Governor Newsom issued a state of emergency on March 4, 2020. This state of emergency has not been rescinded. Further, the Stay-at-Home Order was issued pursuant to California Government Code section 8627, which vests the Governor with authority to "promulgate, issue, and enforce such orders and regulations as he deems necessary…." Executive Order N-33-20. The Stay-at-Home Order did not contain any provision setting criteria for the end of the Order, nor did it create a framework providing that the stay-at-home restrictions would not be reimposed once they were loosened. Indeed, the same state of emergency declaration used to impose the Stay-at-Home Order still vests Governor Newsom, today, with the same authority to issue orders as it did in March 2020. While Governor Newsom has rescinded the Stay-at-Home Order, he did so only after this lawsuit was filed, and he has given no assurances that he will not re-impose it or a similar Order. Indeed, new COVID-19 variants are consistently emerging and vaccines do not always immediately work against these new variants (as evidenced by the need for booster shots). Plaintiffs, and Californians, live in constant risk of an uptick in transmission rates and, therefore, risk of old restrictions re-imposed at the whim of Governor Newsom.

These factual differences, particularly that the Stay-at-Home Order contained no sunset or self-repeal provisions, reveal that *Brach* is not applicable here.

**1. The Voluntary Cessation Exception to Mootness**

Defendants oversimplify *Brach*, only considering whether or not a closure order is currently in effect or could happen in the future. Defs. Reply Brf. 2:17-26. In doing so, Defendants fail to

Plaintiffs' Surreply Summ. Judgment                                      Case No. 2:20-cv-00852-JAM-CKD

2

1   acknowledge *why* there was no closure order in place. In *Brach*, "[t]he State did not rescind its
2   school closure orders in response to the litigation—the orders 'expired by their own terms' after
3   COVID-19 transmission rates declined and stabilized." *Brach*, 2022 WL 2145391 at *5 (quoting
4   *County of Butler v. Governor of Pa.*, 8 F.4th 226, 230 (3d Cir. 2021)). At each step the reopening
5   framework was "designed to keep California K-12 schools open for in-person instruction safely
6   during the COVID-19 pandemic." *Id*. at *6. Indeed, the Ninth Circuit acknowledged that "the
7   Governor's continuing authority…is a consideration in our analysis," but found that there was not a
8   "constant threat" because "local areas achieved the specified benchmark." *Id*. at *7. Moreover, by
9   virtue of pronouncements by the executive and the legislature, the State "carried its burden of
10  establishing that the challenged behavior cannot reasonably be expected to recur." *Id.* at *5.

11  Here, by contrast, the Governor's continuing authority looms in a way it did not in *Brach*.
12  Neither the state of emergency declaration nor the Stay-at-Home Order contain pre-existing criteria
13  for determining when the effects of those orders ends. What is more, there is no language in the text
14  of either order that ensures that the rescission of the Stay-at-Home Order will be the end of the
15  Governor's authority to require Californians stay home and not protest at the Capitol grounds, and
16  neither the Governor nor the legislature have made any pronouncements to this point. For these
17  reasons, the State has not satisfied its burden of demonstrating the voluntary cessation exception
18  does not apply.

19  **2. Capable of Repetition Yet Evading Review**

20  In *Brach*, the Ninth Circuit also concluded that the "capable of repetition yet evading review"
21  exception to mootness did not apply because "there [was] no reasonable expectation that California
22  will once again close the parents' schools." 2022 WL 2145391 at *7 (quotation omitted). As the
23  Ninth Circuit noted, the two exceptions—voluntary cessation and capability of repetition—are
24  "analogous" to one another. *Id.* Accordingly, the State cannot demonstrate this exception does not
25  apply for the same reasons it cannot demonstrate the voluntary cessation exception does not apply.
26  Moreover, the test for capability of repetition, is not "ironclad assurance." 2022 WL 2145391
27  at *7; *see also id*. at *8 (J. Paez dissenting). Instead, the question is whether the challenged practice
28  is "*capable* of repetition," which is something less than "more probable than not." *Id*. (citing *Honig*

Plaintiffs' Surreply Summ. Judgment                              Case No. 2:20-cv-00852-JAM-CKD

3

*v. Doe*, 484 U.S. 305, 318 n. 6 (1988)). Unlike the 2020-21 Reopening Framework, the restrictions on speech on the Capitol grounds have ebbed and flowed—at times going from less restrictive to more—and did not have a consistent path toward opening. In sum, the Capitol grounds did not immediately close at the inception of the state of emergency declaration. Def's Facts. No. 8. It then closed fully on April 21, 2020, was limited to 100 persons on May 24, 2020, had no attendance caps in the summer of 2020, reverted back to a 200-person cap in the fall of 2020, which lasted until June 16, 2021. Def's Facts Nos. 8-9, 15, 17-18. This evolution tracked the transmission data. *See generally* Def's Facts. As the State freely admits, the availability of the Capitol grounds for expressive activity was always contingent upon data, demonstrating that a similar stay-at-home order is "capable" of being applied again the future, should the data show another uptick in transmission.

Without provisions facially terminating the Stay-at-Home Order with objective criteria established prior to litigation, governmental pronouncements denouncing the challenged practice, and a one-way regulatory framework directed toward reopening, as were the case in *Brach*, the logic of *Brach* does not extend to this case. Moreover, the shortened term of just over a month for the Stay-at-Home Order is exactly why it would evade review. Without recognition of an exception to mootness, the merits of the Stay-at-Home Order will never be fleshed out, despite the constant power given to the governor to issue an Order which would again close the Capitol grounds. Situations like this are precisely why exceptions to mootness exist.

## CONCLUSION

During the July 14, 2020, motion hearing, this Court observed that "Everybody knows that he [Governor Newsom] can do that [reimpose the Stay-at-Home Order] simply by holding a press conference and saying, guess what, that order is back in effect." ECF 45 16:1-4. "And that's what prevents this Court from making a finding as a matter of law that this case is now moot." *Id*. This Court's observations still apply today. For the foregoing reasons, the Court should consider this matter a live controversy and grant Plaintiffs' Motion for Summary Judgment and deny Defendants' Motion for Summary Judgment.

Dated: July 6, 2022

Plaintiffs' Surreply Summ. Judgment                                   Case No. 2:20-cv-00852-JAM-CKD

4

        s/ Gill Sperlein
_____

D. Gill Sperlein
LAW OFFICE OF D. GILL SPERLEIN
345 Grove Street
San Francisco, CA 94102
Telephone: (415) 404-6615
Facsimile: (415) 404-6616

Harmeet K. Dhillon
Mark P. Meuser
DHILLON LAW GROUP INC.
177 Post Street, Suite 700
San Francisco, California 94108

*Attorneys for Plaintiffs*

Plaintiffs' Surreply Summ. Judgment     Case No. 2:20-cv-00852-JAM-CKD

5